UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL DON J., <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No. 1:23-CV-00418-AKB-REP <br><br> **REPORT AND RECOMMENDATION** |

Pending is Petitioner Michael Don J.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 16) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a fifty-year-old man who suffers from ulcerative colitis and primary sclerosing cholangitis. AR 16. On October 20, 2020, Petitioner filed an application for social security disability income ("SSDI") alleging a disability onset date of April 4, 2020. AR 13. The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). *Id.* On March 17, 2022, the claim went to a hearing before ALJ David Willis. *Id.* On June 22, 2022, the ALJ issued a decision that was unfavorable to Petitioner. AR 13-25.

**REPORT AND RECOMMENDATION - 1**

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-3.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises two points of error. First, Petitioner contends that the ALJ improperly rejected the opinions of his primary care provider, Dr. Lois Niska. Pt's Br. at 5-8. Second, Petitioner maintains that the ALJ failed to provide clear and convincing reasons for rejecting Petitioner's testimony about the severity of his diarrhea, fatigue, and abdominal pain. *Id.* at 8-12.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The

**REPORT AND RECOMMENDATION - 2**

ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the

**REPORT AND RECOMMENDATION - 3**

claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is his ability to do

**REPORT AND RECOMMENDATION - 4**

physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: ulcerative colitis and primary sclerosing cholangitis. AR 16. The ALJ determined that these impairments limit Petitioner to a subset of light work. AR 19. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that these restrictions would not prevent Petitioner from returning to his past work in sales. AR 22. In the alternative, the ALJ found that Petitioner could perform an alternative range of light jobs, including working as a bench assembler, sub-assembler, or hand packager. AR 24. The ALJ, therefore, found that Petitioner was not disabled. AR 24-25.

**REPORT AND RECOMMENDATION - 5**

## DISCUSSION

I. The Medical Opinion Evidence

    *a. The Competing Opinions or Drs. Coolidge, Arnold, and Niska*

In the summer of 2019, Petitioner sought emergency treatment for abdominal pain and chronic diarrhea. AR 254. Petitioner was referred to a gastroenterologist and subsequently diagnosed with ulcerative colitis and primary sclerosing cholangitis ("PSC").[1] AR 258, 267, 306, 315, 320, 311. Petitioner started treatment while continuing to work. AR 207, 209, 306, 311. In April 2020, Petitioner stopped working. AR 207, 209. The medical record and hearing testimony indicates that the primary reason Petitioner left his job was because he was at "high risk" from COVID-19 given his medical conditions and the immunosuppressant medication he was taking. AR 41, 348, 350.

Petitioner filed a claim for disability benefits in October 2020, alleging a disability start date of April 2020. At the disability hearing, the ALJ asked Petitioner about his ability to either work from home or return to work in person post-pandemic. AR 41. Petitioner responded that his ulcerative colitis and PSC caused such frequent diarrhea, fatigue, and abdominal pain that he could not do any full-time work, even if COVID-19 was not a factor. AR 41-43. The record

---

[1] Ulcerative colitis is "a chronic inflammatory bowel disease." *See* The National Institute of Health's Entry on Ulcerative Colitis, available at https://www.niddk.nih.gov/health-information/digestive-diseases/ulcerative-colitis (last accessed July 30, 2024). PSC is "a chronic liver disease in which the bile ducts inside and outside the liver become inflamed and scarred, and eventually narrowed or blocked." *See* The National Institute of Health's Entry on Primary Sclerosing Cholangitis, available at https://www.niddk.nih.gov/health-information/liver-disease/primary-sclerosing-cholangitis (last accessed July 30, 2024). It is common for individuals with PSC to suffer from ulcerative colitis. *Id.* (under Definition & Facts).

**REPORT AND RECOMMENDATION - 6**

contains three medial opinions[2] assessing the severity and functional impact of these allegedly disabling conditions.

First, on April 15, 2021, Dr. Thomas T. Coolidge reviewed Petitioner's medical records on behalf of the Social Security Administration. Dr. Coolidge explained that Petitioner had a "good response" to medication – Humira – and that his conditions were so well "controlled" that they could not be considered severe.[3] AR 65. Dr. Coolidge, accordingly, concluded that Petitioner was not disabled. *Id.*

Second, on September 8, 2021, Dr. Leslie Arnold reevaluated Petitioner's medical records at the reconsideration level. AR 72-73. Dr. Arnold took a more cautious approach than Dr. Coolidge. Dr. Arnold agreed that Petitioner's ulcerative colitis and PSC "appear[ed] to be non-severe," but found that there was not sufficient evidence to fully evaluate the impact of these conditions because Petitioner never returned questionnaires about his daily functioning. AR 73. Dr. Arnold, therefore, found that Petitioner's claim for benefits should be denied based on insufficient evidence and Petitioner's "failure to cooperate." *Id.*

Finally, on March 12, 2022, Petitioner's primary care provider, Dr. Lois Niska, completed a form affirming that Petitioner has ulcerative colitis and PSC. AR 512-514. Dr. Niska noted that these conditions cause "explosive diarrhea." AR 513. In the section of the

---

[2] For ease of reference, the Court uses the term "medical opinions," colloquially, to include both the "medical opinions" and the "prior administrative medical findings." *See* 20 C.F.R. § 404.1560.

[3] In the social security disability context, "severe" is not a high standard. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (explaining that the severity requirement is a "de minimis screening device used to dispose of groundless claims") and Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *2 (January 1, 1985) ("the severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working").

**REPORT AND RECOMMENDATION - 7**

form asking how often Petitioner needs to use the restroom "on short notice or on an urgent basis," Dr. Niska wrote "3-4 due to [ulcerative colitis]" but did not specify if this was 3-4 times per day, 3-4 times per week, or even less frequently.  *Id.*  Dr. Niska, however, opined that Petitioner would have difficulty "routinely working for two hours at a stretch without being able to take a bathroom break," suggesting that she meant 3-4 times per day.  AR 514.  Finally, Dr. Niska asserted that fatigue from Petitioner's PSC and stool issues caused by his ulcerative colitis would (i) impair Petitioner's attention and concentration "to such a degree that he could not be expected to perform even simple work tasks" for 10% of the work week and (ii) prevent Petitioner from working two days or more a month.  *Id.*

These opinions presented a genuine conflict, which the ALJ had a duty to resolve.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within the record).  The ALJ satisfied this duty by considering all three opinions and concluding that the truth was somewhere in the middle.  Specifically, the ALJ found that Petitioner's PSC and ulcerative colitis were more severe than Dr. Coolidge acknowledged, but less debilitating that Dr. Niska believed.

    b.  *Standard of Review*

For claims filed on or after March 27, 2017, the ALJ evaluates the persuasiveness of each medical opinion based on several factors, including supportability, consistency, relationship with the claimant, and specialization.  20 C.F.R. § 404.1520c(a).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 404.1520c(b)(2).  The factor of supportability looks inward at a medical

**REPORT AND RECOMMENDATION - 8**

opinion's bases: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c (c)(2).

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

    c. *The ALJ's Evaluation of Dr. Niska's Opinions*

The ALJ provided three, interrelated reasons for rejecting Dr. Niska's opinions about the severity of Petitioner's conditions. First, the ALJ determined that Dr. Niska's treatment notes did not match her conclusions. AR 22. Second, the ALJ found that Dr. Niska's opinions were inconsistent with the documented improvement in Petitioner's condition "with prescribed medication." *Id.* Finally, the ALJ thought that Dr. Niska's opinions were more extreme than one would expect given that there was "little to no evidence of recurring emergent care and treatment notes . . . generally within normal limits." *Id.* This analysis appropriately focused on the supportability and consistency of Dr. Niska's opinion. *See* 20 C.F.R. § 404.1520c(b)(2). It is also supported by substantial evidence.

Before Petitioner started medication, he reported that he experienced "about 14 episodes" of diarrhea per day. AR 254. In September 2019, Petitioner started taking Humira. AR 306. By

**REPORT AND RECOMMENDATION - 9**

February 2020, he reported that he was "doing better" and having "1-2 formed" bowel movements daily. He denied abdominal pain or liver-related complaints. *Id.* His gastroenterologist concluded that his ulcerative colitis was in "clinical remission on Humira" and that his PSC was "doing well." AR 309. Notably, Petitioner continued working fulltime during this period. AR 209. It was not until April 2020, when he stopped working due to the pandemic, that Petitioner alleges that he became disabled. AR 207-209.

The medical record supports the ALJ's conclusion that Petitioner's conditions did not appreciably deteriorate in April 2020. As the ALJ's summary of the medical record illustrates, Humira remained a generally effective treatment long after Petitioner's alleged disability onset date. AR 20-22. In August 2020, for example, Petitioner (i) told his gastroenterologist he was generally "doing well on Humira" and (ii) told Dr. Niska that Humira was controlling his symptoms.[4] AR 20, 301, 350. At that time, Dr. Niska filled out short-term disability paperwork explaining that Petitioner was immune compromised and could not work due to COVID, but noted that Petitioner's conditions did not cause any restrictions in his activities of daily living. AR 354.

Four months later, in December 2020, Petitioner informed Dr. Niska that his symptoms remained "variable from day-to-day." AR 20, 348. Petitioner underwent an MRI of his abdomen the following month, January 2021. AR 20, 377. This MRI revealed that the chronic changes of Petitioner's bile duct remained stable and that there was "resolution" and

---

[4] Petitioner stresses that he also reported having looser stools and increased abdominal pain in the 3-4 days prior to his next Humira injection. Pt's. Br. at 7 (Dkt. 16) (citing AR 301). But Petitioner's gastroenterologist increased his Humira to weekly doses to address this issue. AR 304. After this adjustment, Petitioner repeatedly advised that he was doing well on Humira, without any caveats or complaints about the days leading up to an injection. AR 406, 426, 427.

**REPORT AND RECOMMENDATION - 10**

"considerable improvement" of his bowel thickening. *Id.*; *see also* AR 404 (explaining that the January 2021 MRI shows "stable findings of PSC").

On June 1, 2021, over a year after Petitioner's alleged disability onset date, Dr. Niska wrote that Humira was "work[ing] well" for Petitioner and called his PSC a "historical condition." AR 426. Dr. Niska also noted that Petitioner could "go back" to work once he was vaccinated.[5] AR 427. On June 29, 2021, Petitioner saw his gastroenterologist for a follow-up visit. AR 20, 404. Lab work showed that Petitioner's liver function tests were mildly elevated. *Id.* But Petitioner reported that he was "doing well on Humira weekly with no symptoms" and was having one bowel movement every other day. *Id.* The gastroenterologist found that Petitioner's ulcerative colitis remained "in clinical remission on Humira." AR 406.

It was reasonable for the ALJ to conclude that Dr. Niska's medical source statement conflicted with these records. Dr. Niska opined that Petitioner would be off-task at work 10% of the day, would miss two days of work a month, and would have trouble working two hours without a bathroom break. AR 514. The records spanning from April 2020 to June 2021, however, indicate that Petitioner's ulcerative colitis was in remission on Humira, his PSC was stable, and his symptoms were manageable.

To counter these conclusions, Petitioner focuses on two records from the *end* of the period of alleged disability: (i) an August 2021 visit to his gastroenterologist where he reported more intrusive symptoms and (ii) January 2022 imaging showing worsening of his PSC. But the ALJ considered both of these records and provided rational reasons for giving them less weight than the records spanning the prior 17 months of the period of alleged disability. For the August

---

[5] The medical record indicates that Petitioner received a COVID vaccine, not long thereafter, sometime in June 2021. AR 404.

**REPORT AND RECOMMENDATION - 11**

2021 record, for example, the ALJ noted that Petitioner reported "constant" abdominal pain. AR 20 (citing AR 438). The ALJ observed, however, that Petitioner appears to have temporarily stopped taking Humira injections sometime prior to this visit. *Id.* This was a valid point for the ALJ to consider when assessing the impact of Petitioner's conditions. *See Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (a condition that can be effectively controlled with medication is not disabling for the purposes of determining eligibility for Social Security Insurance benefits).[6]

As for the January 2022 imaging, the ALJ acknowledged that this imaging revealed "progressive worsening" of Petitioner's bile duct. AR 21. The ALJ noted, however, that this physical progression was not accompanied by any "evidence of emergent care visits or follow up treatment with respect to [Petitioner's] condition." *Id.* The ALJ, consequently, declined to find that Petitioner's PSC-related *symptoms* had worsened in a measurable way. AR 22. The undersigned cannot say that this was an unreasonable conclusion, especially in a case like this one, where the chronic changes caused by Petitioner's PSC were accompanied by reports of manageable or no symptoms for many months. AR 301, 350, 354, 404, 426-427.

Petitioner's arguments to the contrary lose sight of the forest for the trees. Petitioner focuses on records from the end of the period of alleged disability to argue that the ALJ misconstrued the record and improperly rejected the opinions of Dr. Niska.[7] Pt.'s Br. at 4, 7-8

---

[6] As Petitioner notes, subsequent records indicate that Petitioner resumed using Humira after the August 2021 visit. AR 477 and 486 (listing Humira as a current medication).

[7] Petitioner also asks the Court to consider a Mayo Clinic article stating that a liver transplant is the only known cure for advanced PSC. Pt.'s Br. at 11 (Dkt. 16). A Mayo Clinic article, however, will rarely, if ever, provide a proper basis for reversing an ALJ's decision. While courts sometimes rely on reputable sources like the Mayo Clinic for definitions or descriptions of unfamiliar medical terms, it would be wildly inappropriate for a judge to opine on the severity or intensity of a particular claimant's symptoms based on such an article. *See Day v. Weinberger*,

**REPORT AND RECOMMENDATION - 12**

(Dkt. 16). A reasonable jurist *could* have given these records more weight. The existence of an alternative reading of the record, however, does not justify relief on appeal. The role of the Court in reviewing the Social Security Commissioner's decisions is "a limited one." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The question on appeal is not whether substantial evidence exists to support the claimant's preferred findings, but whether substantial evidence supports the ALJ's findings. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). In determining whether such evidence exists, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). As long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, the ALJ was faced with an opinion from Dr. Niska, which Petitioner reads as compelling a finding that he was disabled as of April 4, 2020. See Pt.'s Br. at 12-13 (Dkt. 16) (arguing that the Court should remand for an immediate payment of benefits based on Dr.

---

522 F.2d 1154, 1156 (9th Cir. 1975) (holding that an ALJ "who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition") and *Medina v. Comm'r of Soc. Sec. Admin.,* No. CV-16-00462-PHX-JJT, 2017 WL 4216252, at *4 (D. Ariz. Sept. 22, 2017) (refusing the petitioner's request to consider medical treatises regarding the diagnosis and treatment of IBS because "it is not the Court's function to formulate a medical opinion"). In any event, the article that Petitioner cites does not help his case. The Mayo Clinic website states that PSC "is often diagnosed before symptoms appear" and that many people with "continue to feel generally well for several years." *See* Mayo Clinic Entry on Primary Sclerosing Cholangitis available at https://www.mayoclinic.org/diseases-conditions/primary-sclerosing-cholangitis/symptoms-causes/syc-20355797 (last accessed July 29, 2024). It then warns that there is "no reliable way to predict how quickly or slowly the disease will progress for any individual." *Id.* In other words, this article cannot tell the Court how Petitioner's PSC was impacting his functioning *during the period of alleged disability*. If and when Petitioner's disease progresses to the point that he needs a liver transplant, he will be able to file a new claim for disability benefits and receive a determination of his eligibility for assistance at that time.

**REPORT AND RECOMMENDATION - 13**

Niska's medical opinion). On the other hand, the ALJ was confronted with over a year of medical records indicating that Petitioner had responded well to medication and was having manageable symptoms. *Supra* pp. 9-11 and AR 20-21. These records included a note from Dr. Niska stating that Petitioner could go back to work once he was vaccinated. AR 427. The undersigned cannot conclude that the ALJ acted unreasonably in the face of this record.

II. <u>Petitioner's Symptom Testimony</u>

Petitioner's second claim of error is that the ALJ improperly rejected his testimony about the severity of his diarrhea, fatigue, and abdominal pain. Pt.'s Br. at 8-12 (Dkt. 16). When evaluating the reliability of such testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). In other words, "the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

**REPORT AND RECOMMENDATION - 14**

On appeal, the district court's role is to review, not redo, this work. If the ALJ's rationale for rejecting a petitioner's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

    a.  *The ALJ applied the proper legal standard.*

Petitioner contends the ALJ applied an incorrect legal standard when he discounted Petitioner's testimony as "not entirely consistent with the medical evidence and other evidence in the record." Pt.'s Br. at 10 (Dkt. 16) (citing AR 20). The Ninth Circuit rejected this exact argument in *Smartt* – a case that petitioner, strangely enough, cites to support his position. *Smartt*, 53 F.4th at 498.

In *Smartt*, as here, the petitioner argued that the ALJ's use of the phrase "not entirely consistent with the medical evidence" improperly "penalized her for not providing objective medical evidence fully corroborating the severity of her self-reported symptoms." *Id.* The Ninth Circuit observed that the phrase "not entirely consistent with the medical evidence" is commonly used by ALJs and has generated challenges on appeal. *Id.* at 499 n.2. The Ninth Circuit concluded, however, that these challenges have misread the "not entirely consistent" boilerplate. The Ninth Circuit explained that ALJs often use the phrase "not entirely consistent with" to indicate that the claimant's testimony is *inconsistent* with other evidence in the record. *Id.* at 498-499. Because that was the case in *Smartt*, the Ninth Circuit rejected the petitioner's claim of legal error. *Id.* The same reasoning applies here.

At the beginning of his credibility assessment, the ALJ accurately recited the two-step process for evaluating Petitioner's symptom testimony. AR 19. Then, in the pages following the

**REPORT AND RECOMMENDATION - 15**

legal recitation, the ALJ spent several paragraphs discussing the medical record and highlighting inconsistencies between this record and Petitioner's testimony. AR 20-21.

The "not entirely consistent with" boilerplate is part of a summary sentence that follows the ALJ's legal recitation and introduces the ALJ's case-specific analysis. AR 20. While this boilerplate is not the most precise, when read in context, it acts as a reasonable transition. Specifically, the ALJ's statement that the Petitioner's testimony was not "entirely consistent" with the other evidence warns the reader that the ALJ found some, but not all, of Petitioner's testimony reliable. Here, for example, the ALJ accepted that Petitioner continues to suffer variable symptoms from his ulcerative colitis and PSC. AR 20-21. The ALJ determined, however, that Petitioner's claims about the intensity and debilitating impact of his symptoms were inconsistent with the medical record. *Id.*

Boilerplate such as this is common in ALJ decisions. When it is not accompanied by a case-specific analysis, it is problematic. *Treichler*, 775 F.3d at 1102-1103. But it is not grounds for the reversal of an otherwise legitimate decision. *Smartt*, 53 F.4th at 498; *see also Elizabeth J. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-00724-IM, 2023 WL 5704233, at *4 (D. Or. Sept. 5, 2023) (rejecting the argument that the ALJ committed a legal error by applying a "not entirely consistent" standard) and *Sonja M. v. Comm'r of Soc. Sec.*, No. C23-5197-BAT, 2023 WL 5769418, at *2 (W.D. Wash. Sept. 7, 2023) (same).[8] The undersigned recommends that the

---

[8] Since *Smartt*, the Ninth Circuit considered credibility findings that used the exact boilerplate that Petitioner challenges in this case on at least two occasions. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) and *Regalado v. O'Malley*, No. 23-15693, 2024 WL 3439586, at *1 (9th Cir. July 17, 2024) (unpublished). In both cases, the Ninth Circuit quoted the "not entirely consistent" boilerplate without criticism, before discussing the substance of the ALJ's credibility findings and upholding them on the merits. *Id.* While they are not directly on point, these cases further undermine Petitioner's claim of legal error.

**REPORT AND RECOMMENDATION - 16**

Court reject Petitioner's claim of legal error and focus on the substance of the credibility findings.

> b. *The ALJ's credibility analysis is supported by substantial evidence.*

Petitioner also attacks the substance of the ALJ's credibility findings. Pt.'s Br. at 11-12 (Dkt. 16). The ALJ, however, rejected Petitioner's testimony for the same reasons he rejected Dr. Niska's opinions, and Petitioner's challenge to the ALJ's analysis fails for similar reasons. AR 20-22.

During the disability hearing, Petitioner averred that he cannot perform any fulltime work because he uses the bathroom 5-15 times a day on short notice, he regularly experiences abdominal spasms where the pain is "easily a ten" on a scale of one to ten, and he is intermittently "wipe[d]" out by fatigue. AR 38-40. The ALJ declined to credit this testimony because it conflicted with the medical record. AR 20-21. In reaching this conclusion, the ALJ considered the entire treatment record. AR 20-21. Based on this review, the ALJ determined that Petitioner's symptoms were manageable during every medical visit where it was clear that Petitioner was actively taking Humira. *Id.* For example, at his last visit with his gastroenterologist, Petitioner reported no symptoms from his ulcerative colitis or PSC. AR 20 (citing AR 404). This was a "clear and convincing" reason for the ALJ to discount Petitioner's testimony. *See Carmickle v. Comm'r of Social Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") and *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider. . . prior inconsistent statements concerning the symptoms").

**REPORT AND RECOMMENDATION - 17**

The ALJ also noted that Petitioner did not seek follow-up care for deteriorating symptoms between August 2021 and early 2022 (the period in which Petitioner argues that his PSC was worsening). This was a valid factor for the ALJ to consider. *See Tommasetti*, 533 F.3d at 1039 (holding that an ALJ did not err in rejecting a claimant's reports of all-disabling pain "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects") and Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 , at * 9 (October 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . , we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

None of the records Petitioner cites compelled a contrary conclusion. *Supra* pp. 11-13. It is undisputed that Humira did not cure Petitioner's conditions. The ALJ acknowledged that Petitioner suffers "variable" symptoms from his ulcerative colitis and PSC. AR 22. The question facing the ALJ, however, was how severe these symptoms were and how they impacted Petitioner's ability to work *during the period of alleged disability*. S*ee Thorne v. Schweiker*, 694 F.2d 170, 171 (8th Cir. 1982) (where evidence establishes that a claimant has a medical condition that causes chronic pain or fatigue, this fact alone does not answer the question of whether a claimant is disabled; the ALJ must consider the severity of the claimant's pain or other limitations); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute."). Here, it was reasonable for the ALJ to conclude that Petitioner was functioning

**REPORT AND RECOMMENDATION - 18**

better than he claimed he was between April 2020 and the Spring of 2022. The Court, accordingly, should affirm the ALJ's credibility findings.

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Petitioner's Petition for Review (Dkt. 1) be **DENIED**, and this action be **DISMISSED** in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: August 12, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 19**